Bertram Harnett, J.
Holding : A defendant doctor in a
medical malpractice action can be required by the plaintiff to give expert pretrial testimony concerning the injuries treated without the plaintiff himself first demonstrating an inability or lack of intention to call another expert to testify at trial.
A. THE PRETRIAL INFORMATION SOUGHT
Sally Kane and her husband Mark have brought this action against two physicians who are claimed to have misdiagnosed in 1970 as multiple sclerosis a tumor lodged in Mrs. Kane’s *174 spinal cord. The Kanes have conducted pretrial examinations of the doctors. A number of questions were asked to which there were objections.
These disputed questions sought to elicit a broad range of information, including:
— the state of therapy for multiple sclerosis or myelopathy in 1970;
— whether and how the defendant doctors kept current by reading authoritatively in their specialty;
—what writings the defendant doctors published in the neurological field;
— what scientific literature was given consideration in treating Mrs. Kane;
— if the symptoms observed were consistent with a diagnosis of a tumor in the nervous system;
— whether a spinal tumor enlarges with time, and therefore delay in its removal produces further compression on the nerve roots;
— was multiple sclerosis generally thought in 1970 to present a history of repeated exacerbation and remission;
— the factors generally bearing upon recovery from damage caused by a spinal tumor.
The doctors argue that they may be compelled at trial to answer these questions concerning their expert knowledge only if the plaintiffs have no other testifying experts. Therefore, they argue, that in pretrial discovery, they need not respond without plaintiffs first positing their lack of alternative expert witnesses to be used at the trial. In now moving to compel answers to the questions put, the Kanes assert their unqualified right to examine the doctors on expert material.
B. THE MCDERMOTT RULE
We begin with the rule of1 McDermott v. Manhattan Eye, Ear (8 Throat Hosp. (15 N Y 2d 20) which, contrary to prior New York practice, unanimously held that a defendant doctor in a malpractice action may be questioned not only as to the relevant facts within his knowledge, but also as an expert witness. The stated rationale was that such opinion evidence, including awareness of proper local medical practice, is “ in a real sense, as much matters of ‘ fact ’ as are the diagnosis and examination he made or the treatment upon which he settled ”. Such expertise, the court found, is pertinent and relevant to a malpractice action, and, under the adverse-party-witness rule, is elicitable from the defendaht doctor (p. 27). Then Chief Judge *175 Ftjld further observed in McDermott that malpractice plaintiffs often have difficulty in securing a physican to testify as an expert against another physician, and, in any event, there is no unfairness in requiring the doctor to answer such pertinent questions in litigation in which he is a named defendant.
Since McDermott was decided in 1964, only one reported case, arising in Supreme Court, Rensselaer County, has required a defendant doctor to give expert testimony at an examination before trial. (Kennelly v. St. Mary’s Hosp. of Troy, 52 Misc 2d 352.) Also, in Charlton v. Montefiore Hosp. (45 Misc 2d 153, 156) Shapiro, J., now a Justice of the Appellate Division, Second Department, noted in a footnote that “McDermott * * * makes it obvious that [the doctor] could also be examined to the same extent [as at trial] in an examination before trial ”.
C. OPPOSING AUTHORITY DISTINGUISHED
But, the doctors in the present case point to cases (Forman v. Azzara, 23 A D 2d 793, affd. 16 N Y 2d 955; Gnoj v. City of New York, 29 A D 2d 404) which they believe narrow the McDermott rule by permitting questioning of defendant physicians concerning expert matters only where the malpractice plaintiffs encounter the difficulty in procuring experts which forms the rationale in McDermott.
In Forman, the lower court’s exclusion of expert questions put to a defendant doctor in a malpractice action was affirmed on the ground that the plaintiff had her own doctor testify as to proper medical practice, whereas in McDermott, the plaintiff had no expert witness or medical proof of her own. The Appellate Division, by a 3 to 2 majority, held that the exclusion was “ harmless error” and in any event the evidence would have been cumulative. The court, then, conceded that the exclusion was erroneous and the primary issue on appeal was how prejudicial that error was. The case does not condition plaintiff’s right to question a defendant doctor as to expert matters upon absence of other expert witnesses. On the contrary, the court assumed that such a plaintiff has an unconditional right to so inquire and merely considered, where that right is erroneously denied, Avhether there was sufficient prejudice to mandate reversal. (See C. Kramer, “ Medical Malpractice,” N. Y. L. J., Jan. 10, 1974, p. 1, cols. 1 and 2.)
Nor does Gnoj v. City of New York (supra), upon being carefully examined, offer any support for the doctors here. That case held that the expert engaged by the defendant in a mal *176 practice suit cannot be compelled to testify on behalf of both defendant and the plaintiff who “ does not lack expert testimony of his own choosing”. Similarly, Gugliano v. Levi (24 A D 2d 591) held improper a plaintiff’s calling of the expert retained by the defendant physician on the dual grounds that (1) ethical considerations barred the expert from being retained by both sides of a conflict, and (2) the work product of the defendant physician, including an expert retained, is immune from use or discovery by the adverse party. Whatever the parameters of the Gnoj and Guglicmo holdings, they do not apply to the defendant expert himself who is subject to the customary testimonial compulsion of a party in litigation. (Cf. Washington v. Cuffaro, 57 Misc 2d 998.)
D. SENSE OP THE MCDERMOTT BULE
The court cannot discern a viable basis for strictly limiting the McDermott rule solely to eases where no other expert is available to the injured and suing plaintiff. While one of several policy considerations given by the Court of Appeals indeed was the frequent practical difficulty in securing a doctor willing to testify against a professional colleague, .the principle stated was not limited to those instances alone where that difficulty is being experienced. The underpinning for the rule is factual content of such expert testimony and considerations of its pertinency and relevancy. The only qualification mentioned in the opinion ¡was contained in footnote 5 on page 30 where the court stated its assumption that the naming of a doctor as defendant was done ■“ in good faith, on the basis of his relationship with the case and not as a device or subterfuge in order to afford the plaintiff an opportunity to call him as an expert witness ”. No such sham device is claimed here.
E. PRETRIAL CONSIDERATIONS
The remaining limitation here deals with, and is applicable to all, examinations before trial under CPLR 3101 et seq. Expert evidence must be within the usual bounds of relevancy and materiality to triable issues. See, Davis v. Lower Bucks Hosp. (56 F. R. D. 21 [E. D. Pa., 1972]).
Compelling a party at .the examination-before-trial stage to lay out or to be bound by a future trial format is neither practicable nor fair. Even if defendants are correct in their interpretation of McDermott, which we believe they are not, and plaintiffs can only call upon the doctors’ expertise at trial if they have no other expert to testify, in a malpractice action the suing *177 party cannot predict with certainty what course will he possible, advisable, or necessitated at trial. For purposes of trial preparation, several expert presentations may be considered. Intervening events, or mere developments in the litigation may affect the final choice. One essential method for eliminating the uncertainty of trial presentation of experts is to reveal the immediately pertinent testimony of the defending doctor, beforehand, at an examination before trial. There is certainly no prejudice or inconvenience to the doctor since (1) as a party he must appear for examination before trial anyway as to the particular facts of the case; and (2) under the McDermott rule, he must be prepared himself for the possibility of being called upon later at trial by plaintiff to testify as an expert. (See B. S. Meyer, “ The Expert Witness; Some Proposals For Change,” 45,St. Johns L. Rev. 105,110 [Oct., 1970].)
There is, of course, the element of pretrial jockeying. In an examination dealing with expert matters, the doctor may be exposed to difficult and damaging inquiry before "trial and in this respect may be forced to give the plaintiff an early tactical advantage not otherwise obtainable. But, such is the case generally with pretrial discovery and indeed is the very purpose intended, viz., to eliminate surprise at trial which often entails deflating one side by revealing in full the issues and facts to be presented at trial. The sporting theory of trial practice has long since been discredited in favor of complete, open and mutual disclosure of evidence to be presented, or required, at trial. (See, e.g. Zellman v. Metropolitan Transp. Auth., 40 A D 2d 248.) Under the CPLR and its liberalized rules of allowing broad pretrial discovery into all matters pertinent and necessary to the prosecution of an action, including information required for cross-examination, there is a wider scope of questioning than might be allowed at trial. (See Allen v. Crowell-Collier Pub. Co., 21 N Y 2d 403, 406 ; 3 Weinstein-Korn-Miller N. Y. Civ. Prac., par. 3101.36.)
F. AOCOBD IN COGNATE JUBISDICTIONS
It should be noted that a majority of other jurisdictions allow the pretrial examination of defendant doctors without the limitation suggested by the defendants here (see Rogotzki v. Schept, 91 N. J. Super. 135; Anderson v. Florence, 288 Minn. 351; cf. Meier v. Ross Gen. Hosp., 69 Cal. 2d 420; Ann. 15 ALR 3d 1446).
Some cases have even expressly held that inquiry into a defendant doctor’s opinion of authoritative sources, including *178 textbooks on a specialty pertaining to the disease or injury treated, is proper. (Myers v. St. Francis Hosp., 91 N. J. Super. 377.) ¡Such questioning may relate to the competence, knowledgeability, and qualifications of, and opinion given iby, an expert witness. (See 7 Carmody-Wait 2d, New York Practice, § 46 :l7; 7 Am. Jur., Proof of Facts 645; 23 C. J. iS., Criminal Law, §§ 886, 889.) With a proper foundation laid it is customarily allowed in cross-examination, and sometimes in direct. Under these general principles it is within the legitimate scope of inquiry of a defendant physician in a malpractice case, at trial under McDermott, and at examination before trial as determined in this decision.
G". CONCLUSION
Accordingly, the defendants are directed to answer the questions, put to them concerning their expert opinion and experience.